UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KELLEY H. ANDREWS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:17-cv-00610 |
| ) | CHIEF JUDGE CRENSHAW |
| WASTE MANAGEMENT INC. OF ) | |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Kelley H. Andrews filed this action against his former employer, Waste Management Inc. of Tennessee ("WM"), alleging that WM violated the Americans with Disabilities Act Amendments Act ("ADAAA"). (Doc. No. 16.) Before the Court is WM's Motion for Summary Judgment. (Doc. No. 25.) For the following reasons, the motion is granted in part and denied in part.

### I. Undisputed Facts

Andrews began working at WM in 2013, where he, *inter alia*, drove a box truck route at WM's Rivergate MRF Recycling facility in Nashville (the "Route"). (Doc. No. 38 ¶¶ 1-2.) For most of Andrews's employment, a helper assisted him on the Route. (Id. ¶ 4.)

Citing concerns with the Route's profitability, WM eliminated some customers on the Route and shortened the time spent at each stop in March 2014. (Id. ¶¶ 5-6.) The next month, WM removed Andrews's helper from the Route, and thereafter Andrews completed the Route alone. (Id. ¶ 7.) WM also reduced the Route from running five to three days per week, and Andrews worked at a WM warehouse the days he did not drive the Route. (Id. ¶ 9; Doc. No. 38-2, Sorensen Dep. at 18-19.)

1

In October 2014, Andrews was diagnosed with prostate cancer and required radiation treatments. (Doc. No. 38 ¶ 10.) Andrews told his supervisor, Ron Sorensen, about his diagnosis, and Sorensen was understanding of Andrews's illness. (Id. ¶¶ 11-12.) WM granted Andrews's request for intermittent FMLA leave through December 31, 2014. (Id. ¶ 13.) During this time, Andrews generally received radiation treatment in the morning and then went to work. (Id. ¶ 14.) No one at WM made negative remarks about Andrews's need for leave or indicated that his leave was problematic. (Id. ¶ 15.) Andrews's last radiation treatment was in December 2014, and he has since been cancer-free. (Id. ¶ 16.)

In January 2015, WM eliminated the Route and Andrews's position, (Id. ¶¶ 18-19), allegedly due to the Route's profitability. (Id. ¶¶ 5-9, 17.) Another company, EarthSavers, took over the Route. (See id.) Andrews's employment with WM ended on February 13, 2015. (Id. ¶ 39.) Andrews's position at WM does not exist and WM did not hire anyone to replace him. (Id. ¶ 45.)

Andrews applied for three positions with WM but was not rehired. (Id. ¶¶ 32, 34, 40.) On January 28, 2015, Andrews applied for a Roll-Off Driver position, requisition number 234208 ("Position 1"). (Id. ¶ 32.)[1] On January 29, 2015, Andrews applied for a Commercial Driver position, requisition number 239302 ("Position 2"). (Id. ¶ 34.) In March 2015, Andrews applied for a Commercial Driver position, requisition number 243017 ("Position 3"). (Id. ¶ 40.) Position 3 was cancelled before it was filled and no one was ever hired for it. (Id. ¶ 41.)

---

[1] WM appears to contest that Andrews applied for Position 1 but states that it will accept his deposition testimony that he did in fact apply for Position 1 as true for the instant motion. (Doc. No. 26 at 4-5 n.4.)

2

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court determines whether sufficient evidence has been presented to make the material issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## III. Discussion

Andrews brings claims for disability discrimination under the ADAAA based on discriminatory termination and failure to hire. (Doc. No. 16.) WM moves for summary judgment on both claims. (Doc. No. 25.)

### A. Discriminatory Termination Claim

A discriminatory termination claim follows the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1972). To

establish a disability discrimination claim using indirect evidence, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. Ferrari v. Ford Motor Co., 826 F.3d 885, 891-92 (6th Cir. 2016).

If the termination arises as part of a workforce reduction, a heighted standard applies to the fifth element. See Hunter v. Metro. Gov't of Nashville, No. 3-12-0916, 2014 WL 4699504, at *5 (M.D. Tenn. Sept. 19, 2014). Plaintiff is required to show additional direct, circumstantial, or statistical evidence indicating that the employer discharged him for impermissible reasons. Id. (citing Geiger v. Tower Auto., 579 F.3d 614, 623 (6th Cir. 2009)). A workforce reduction occurs "when business considerations cause an employer to eliminate one or more positions within the company." Geiger, 579 F.3d at 623-24.

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a legitimate non-discriminatory explanation for its action. Ferrari, 826 F.3d at 892. If the defendant does so, the burden then shifts back to the plaintiff who must introduce evidence showing that the proffered explanation is pretextual. Id.

WM argues that Andrews cannot establish the fifth element of his *prima facie* case. Andrews has not met the heightened standard for establishing disability discrimination in a workforce reduction context because he points to no evidence indicating that WM discharged him for impermissible reasons. Although Andrews states that WM only eliminated his Route, this fact, without additional evidence that WM did so for impermissible reasons, does not establish discrimination. Andrews also appears to argue that his termination was not related to a workforce

4

reduction, as he disputes WM's contention that the Route was unprofitable. However, he still does not provide evidence to establish the fifth element under the lower standard, outside the workforce reduction context. Andrews does not provide evidence to dispute that WM in fact eliminated his position. (See Doc. No. 38 ¶ 45.) Neither does he show that he was replaced or that WM held his former position open after his separation. (See Doc. No. 38 ¶ 45.) Andrews merely discusses facts that do not contradict WM's position, stating the: "Route was given away to Earthsavers, with their customer list and Ron Sorenson does not know if the route came back to Waste Management. However, it was profitable enough that Earthsavers was running the route for at least a year after Defendant terminated Plaintiff." (Id.) Because Andrews presents no evidence to establish the fifth element of his *prima facie* case, the analysis need not go further. WM's motion for summary judgment is granted on Andrews's discriminatory termination claim.

    **B. Failure to Hire Claim**

Similar to a discriminatory termination claim, a failure to hire claim follows the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green. To establish a *prima facie* case of disability discrimination in a failure-to-hire case, the plaintiff must show: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer sought applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, "'the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'" Tartt v. Wilson Cty., Tenn., 982 F. Supp. 2d 810, 816-17 (M.D. Tenn. 2013), aff'd sub nom. Tartt v. Wilson Cty., Tennessee, 592 F. App'x 441 (6th Cir. 2014) (quoting McDonnell Douglas, 411 U.S. at 802); see Freeman v. Potter, 200 F. App'x 439, 450 (6th Cir. 2006); Birch v. Cuyahoga County Probate Court, 392 F.3d 151, 165 n. 12 (6th Cir. 2004).

WM argues that Andrews cannot establish a *prima facie* case of disability discrimination based on failure to hire because he has no evidence that the three positions he applied for remained open while WM sought other applicants.[2] (Doc. No. 40 at 4.) Each position is discussed below in turn.

**1. Position 1**

The parties agree Andrews applied for Position 1 on January 28, 2015. (Doc. No. 38 ¶ 32.) WM, based on Human Resources Generalist Diana Camacho-Lindsey's Declaration, states that it filled Position 1 on December 4, 2014, before Andrews applied. (Doc. No. 38 ¶ 33.) However, Andrews, citing to WM's Answers to Plaintiff's Interrogatories, asserts that WM filled Position 1 on May 11, 2015. (Doc. No. 38 ¶ 33.) WM's interrogatory responses state that Position 1's "hire date" was May 11, 2015. (Id. at 19.) In addition, Andrews discusses WM's "Job Vacancy Listing" dated January 30, 2015, which lists Position 1. (Doc. No. 38 ¶ 33 (citing Doc. No. 25-1 at 37).)[3] WM does not address these factual discrepancies. While the date the position was "filled" and the "hire date" may not refer to the same event and WM may not have timely removed Position 1 from its vacancy list, all inferences from the underlying facts must be made in Andrews's favor. See Matsushita, 475 U.S. at 587. Because a dispute of material fact exists, summary judgment is denied on Plaintiff's failure to hire claim based on Position 1.

---

[2] WM also uses this argument as its legitimate reason for not selecting Andrews and for its contention that Andrews cannot establish pretext.

[3] The Dickson Declaration also states that Position 1 was filled in December 2014. However, the Dickson Declaration states that a different applicant was hired than WM's interrogatory responses. (Compare Doc. No. 25-4 ¶ 4, with Doc. No. 38 at 19.)

6

## 2. Position 2

Similar to Position 1, the parties do not dispute when Andrews applied for Position 2—January 29, 2015. (Doc. No. 38 ¶ 34.) WM, citing the Declaration of Operations Manager Kenneth Troy Dickson ("Dickson Declaration"), states that it decided to hire James Shaw for Position 2 on January 28, 2015, before Andrews applied for the position. (See Doc. No. 38 ¶¶ 35-38.) However, Andrews, citing WM's Answers to Plaintiff's Interrogatories, argues that James Shaw was hired for Position 2 on February 11, 2015. (Doc. No. 38 ¶ 38 (citing id. at 19).)[4] WM does not address the discrepancy between its own witness's declaration and its interrogatory responses. While the date WM decided to hire James Shaw and his "hire date" may not refer to the same event, as previously discussed, the Court cannot make that inference here. Therefore, summary judgment on Plaintiff's failure to hire claim based on Position 2 is denied.

## 3. Position 3

WM and Andrews agree that Andrews applied for Position 3 in March 2015. (See Doc. No. 38 ¶ 40.) Citing the Dickson Declaration, WM states that the request for Position 3 was cancelled and no one was ever hired for Position 3. (Doc. No. 38 ¶ 41.) In response, Andrews does not provide evidence to dispute that WM cancelled the request for Position 3 but merely contends that he was not given an opportunity to depose Dickson. (Id.) This argument is unavailing. Andrews does not explain why he was not given the opportunity to depose Dickson. He was aware of the discovery he needed to respond to WM's motion. Magistrate Judge Newbern granted his motion to conduct two depositions outside the Court's previously set discovery deadlines. (Doc. No. 37.) Andrews also had an opportunity—both in his motion for discovery and subsequently—to request Dickson's deposition.

---

[4] In addition, WM's "Job Vacancy Listing" dated January 30, 2015 lists Position 2. (Doc. No. 25-1 at 37.)

Furthermore, Andrews does not provide any evidence to establish that WM cancelled Position 3 specifically to discriminate against him. See Moore v. Abbott Labs., 780 F. Supp. 2d 600, 613 (S.D. Ohio 2011) ("Cancellation does not bar a discrimination claim, however, if the plaintiff can establish that the defendant cancelled the position specifically to unlawfully discriminate against the plaintiff." (citing Storey v. City of Sparta Police Dep't, 667 F. Supp. 1164, 1169-70 (M.D. Tenn. 1987))).

Because Andrews does not provide evidence that Position 3 remained open while WM sought other applicants, or that WM cancelled Position 3 for a discriminatory reason, he cannot demonstrate his *prima facie* case of discrimination based on Position 3. Accordingly, WM is entitled to summary judgment on the failure to hire claim based on Position 3.

## IV. Conclusion

WM's Motion for Summary Judgment (Doc. No. 25) is granted as to the discriminatory termination claim and that claim is dismissed with prejudice. The motion is denied as to the failure to hire claim based on Positions 1 and 2 and granted based on Position 3. The case will proceed to trial on the failure to hire claim.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE